Court. Thank you all for being here. We have a full slate of four cases today, and Judge Grant and I are pleased again to be sitting with Judge Schlesinger. Thank you for assisting this court this week with oral argument. We're very happy to have you here with us. Let's get started with case number one, Jean-Daniel Perkins v. United States of America, 20-14781. Mr. Rett, you have reserved five minutes for rebuttal. You may proceed when you are ready. Thank you, Your Honor, and may it please the Court. I want to talk about both issues in my brief, if I have time to do so this morning. I think this case is about what the duty is of the court and what the duty is of defense counsel when there are signs in the record that a defendant is suffering from mental health issues and possibly a competency issue. I think we all know that there's a duty of counsel to investigate issues relevant to a defendant's case, and we know it's a violation of due process to try and convict and sentence a defendant when he's incompetent. I think the problem in this case is things got a little bit clouded because not only did the court find Mr. Perkins disruptive, but trial counsel appeared to find him difficult and possibly annoying, and everyone had an incentive in this case to shut the case down and just move forward. I think that's clear from the final order that Judge Carnes issued, the 56-page order that says, I don't have any desire to But there's a little bit more to it than you're saying. It was not just that he was difficult and the court didn't want to deal with him anymore. We actually have phone calls where he was talking with his mother and expressly showing that he had figured out a way around the system and was going to be doing all of these acts to disrupt court on purpose. So things that might look like mental illness were, in fact, he was faking them. Well, Your Honor, I think that there are two issues there. One is that the phone calls that you're addressing occurred 19 months prior to sentencing. They occurred during the trial phase of the case, and then there was a 19-month gap where no one had contact with Mr. Perkins. So defense counsel didn't meet with him. He did not appear in court, so the court could observe him. No one had the opportunity to see what his mental state was at that point except for the BOP doctor at USP Atlanta, Dr. Gonzalez, who did meet with Mr. Perkins and diagnosed him with depressive-type psychosis at that point. And I'm talking about between trial and sentencing that this happened. And so at that point when he's diagnosed with depressive-type psychosis, the doctor has made a finding that he has an illness that can include hallucinations, delusions, and psychosis, and he prescribed medication for that. And it's at that point that I'm talking about here where there was an opportunity for trial counsel to obtain those records. And there are other records, obviously, that I've cited in my brief that were available to defense counsel that defense counsel did not obtain that would have supported not only the request for competency at that time, but also requests for mitigation at sentencing, which his attorney attempted to do. He attempted to make a mitigation argument, but he was not able to provide any supporting documentation from actual doctors when there were at least three doctors in the record who had identified serious... But your brief makes two arguments, and I think to go to the first one, didn't this court in Perkins 1 decide that it was not an abuse of discretion for the trial court to deny a competency hearing? That's right, Your Honor. So in this, in Perkins 1, this court addressed the denial of the competency hearing, which is a procedural due process claim. And the court said, on the record before us, it was not an abuse of discretion to deny a competency hearing. Right. So doesn't that, doesn't that finding necessarily include a finding that the trial court didn't clearly err when it found Perkins competent at sentencing? Your Honor, I don't think it does. I think that the actual language from Perkins 1, it makes two statements. One of the statements is, Mr. Perkins argues that the district court should have ordered a competency hearing before his trial began. We disagree, and that's at 1339 from that opinion. And then the other one is the statement that, on the record before us, it was not error to deny a competency hearing. I don't think either one of those touches the substantive competency claim that he was incompetent at the time of his sentencing. And I think that's the claim that is preserved through this case. If there's even, if it's, if it wasn't an abuse of discretion to deny a competency hearing, then how could it be clear error to, to find that he was competent? Don't those things have to go together? I mean, you still, you still could get to your second claim, but why, why do you need to fight your first claim? It seems pretty clear to me. Your Honor, I don't think it's clear, and I think that, as this court said in the first case, on the record before it. So this court in Perkins 1, in addition to the trial court in Perkins 1, did not have access to the mental health records that we now have access to that counsel... But appellate decisions are always made on the record before us. I mean, that's the nature of it. That's, I don't think that's different than any other. Even if we don't say it's on the record before us, it is necessarily on the record before us. Right, right. And so I think at that point in time, we didn't have documents in the record to show that he was actually incompetent, which are the documents that we now have in the record for the substantive due process claim. So I agree with you that the procedural due process claim has been dealt with, but the substantive due process claim that he was actually incompetent while he was sentenced, I think this court can certainly consider, and I think that there's ample evidence in the record that he was incompetent at that time. But should the court decide that it doesn't want to reach that first issue, I think the second issue, again, we have shown sufficient facts to show that counsel, the decision not to seek the available mental health records or to seek either a private mental health evaluation or to go to the court prior to sentencing and seek a mental health evaluation, I think counsel's representation there fell below an objectively reasonable standard. Didn't counsel give it what I might call his best shot? I mean, he made arguments in this direction and the district judge, for reasons that I find understandable, was not having any of it. Right, but he made those arguments without the back, I'm sorry, he made those arguments without the support of medical doctors, which there was evidence in the record that he could have used to show the court that. So when defense counsel testified at the evidentiary hearing in this case, he said, I made these arguments about the competency issue, but I didn't have a doctor, I didn't have any support for that. But what we know now was when Mr. Perkins was admitted into the detention center, he was interviewed by two separate doctors who found that he was having delusions and paranoia, and they talked specifically about what those were. In 2010, three years before his sentencing, those doctors documented that. Then, between trial and sentencing, in that 19-month gap, a Bureau of Prisons doctor diagnosed him with depressive type psychosis. So I understand what the court is saying, that, well, the court said, I'm not going to do that on the record, but counsel always has a duty to investigate issues, particularly for mitigation at sentencing. And the idea that counsel could be on notice from the prior PSR from 1999 that said this person has suffered from schizoaffective disorder. The PSR was there, all of that, most of that was there before the trial, too, right? That's correct. And I thought the argument was, you found he was competent for trial, but something has changed by the time of sentencing. So why would documents from before the trial be relevant? Well, Your Honor, the PSR from 1999 puts counsel on notice that there's a mental health issue. And instead of reaching out to find records from prior incarceration or prior hospitalizations, counsel did nothing. And then at sentencing, counsel attempted to argue to the court that there might be a mental health issue that the court should consider, but counsel had no records to back that up. But your COA is limited to sentencing, right? That's correct, Your Honor. And so, but I'm hearing you make arguments about trial. I'm not, Your Honor. I'm sorry if I'm unclear, but I think that counsel had a duty between trial and sentencing, particularly if counsel wanted to make that mitigation argument that he did make, that he had a duty to find these records and support his claims to the court. He also, counsel also objected to the obstruction of justice enhancement, which was applied based on Mr. Perkins' failure to attend trial and for his disruptive behavior. Counsel made a very vague argument about why Mr. Perkins might be acting like that. But there were records available to counsel showing that a BOP doctor had said he was having hallucinations, delusions, and psychosis during that very time. And instead of telling the court that, instead of saying, yeah, I understand you think he was disruptive and you want to enhance his sentence based on that, but there is a reason for that. Wasn't there a conflict, though, in the psychiatric testimony that the magistrate judge used in his R&R? As to the competency evaluation, the magistrate judge found that the government's expert was correct, that Mr. Perkins was competent at the time of his sentencing hearing. But Your Honor, I think the magistrate judge overlooked several things in the record which we outlined in our brief, which is that the defense expert's testimony was consistent with seven different Bureau of Prisons doctors who found that Mr. Perkins, over an eight or nine-year period, was suffering from depressive types. So your conclusion would be any time a trial judge has a sovereign citizen who's acting the way he acted, you've got to have a psychiatric exam before you can proceed? Your Honor, there's evidence in the record that that person has a diagnosed mental illness. I think counsel has a duty to investigate that. And so if counsel had investigated that and found, you know what, there are no records, no other doctor has ever said he has any problems, maybe over time, Your Honor. You can answer the question. If he had investigated that claim and found that there were no jail records or there were no BOP doctor records, I think he would not have had grounds to make that argument, Your Honor. In this case, with this person making those sovereign citizen claims and being so disruptive and knowledge that there was a prior mental health diagnosis and prior antipsychotic medication, yes, I think counsel should have investigated that and should have used those records to support his claims.  And you've reserved five minutes for a rebuttal. Rebuttal. May it please the Court, David O'Neill on behalf of the United States. John Daniel Perkins appealed the district court's order denying his section 2255 petition on the grounds that his substantive due process rights were violated when he was sentenced while incompetent and that his counsel was constitutionally ineffective for failing to seek a competency evaluation or request mental health records. This is the second time Mr. Perkins has litigated his competency before this court. And this court's decision in Stouffle and others makes clear that he's procedurally barred from relitigating those claims. Now, in her argument, Mr. Rett focused on the fact that this court in its decision in address the substantive due process claim. However, it is clear in the appellant's brief in Perkins 1 that he raised specifically a substantive due process claim at page 56 of his brief. What about the fact that in our opinion on the direct appeal, we applied the abuse of discretion standard which would apply to the procedural due process claim rather than clear error? Your Honor. It would be our submission that when the court affirmed the district court in Perkins 1, whether it specifically discussed individual claims or not, that issue has been decided. All matters raised in the appellant's brief have been decided. Whether explicitly discussed under the appropriate standard of review, I mean, this court has the discretion to affirm the court below without any explanation of its decision making. But the magistrate judge did not find that the ineffective assistance of counsel claim had been forfeited. So do we review your argument that it's been forfeited for clear error? Your Honor, the government raised in its response to the 2255 motion the procedural bar argument. The court, after reviewing the brief, decided to have the hearing anyway. We do not believe that that forecloses this court from deciding it was procedurally barred. We believe that's properly before the court and that's why we've raised it in our briefs. But certainly, as an alternative, when the factual findings of the courts below are reviewed, that certainly is for clear error. And so because these claims have been litigated before, they were directly raised in the appellant's brief in Perkins 1, they are procedurally barred. But this court can affirm the lower courts based purely on the factual findings below. And before I turn to the factual findings in the 2255 proceeding below, I want to focus a bit on the trial court because in his argument, Mr. Perkins' counsel raised the fact that the trial court did not focus on any evidence contemporaneous with sentencing when determining that he was competent in denying his motion. That's not accurate. It is true the trial court focused on the jail calls in which he planned and executed a scheme to devise a Rule 43 defense by manufacturing his absence. But the court also looked at some of his more recent pro se filings that he filed with the court that made the exact same arguments. He argued that he was incompetent in his own handwritten pro se filings and cited and quoted the Dusky Standard. He also cited Rule 43 and argued that he could not be held anymore because he was not present for trial. He cited Rule 43. He cited Supreme Court precedent. And so the trial court certainly did not err by holding that he was still competent at the time of his sentencing because she was able to look at evidence more contemporaneous with sentencing. But regardless of that, Mr. Perkins had the opportunity below in the 2255 proceeding to show he was incompetent. He presented an expert witness. He presented all of the Bureau of Prisons medical records that he claims reflect his incompetence. And he obtained testimony from numerous treating psychologists within the BOP. After hearing all of that, the courts below rejected his contention that he was incompetent at the time of either his trial or his sentencing. In so doing, they discredited his expert, Dr. Flores, and credited the government's expert. Ms. Gore's decision in battle reflects that that alone is sufficient to uphold the lower court's ruling below. Well, didn't, I mean, the lower court's ruling, I guess, which lower court's ruling are you talking about? Are you talking about the initial district court or are you talking about the lower court in this round of proceedings? I'm talking about the courts below in the 2255 proceedings. Okay. And so the proceedings in which both the magistrate and district courts reviewed evidence that Mr. Perkins put on. I can't recall. Did Mr. Perkins have different counsel for his trial and for his appeal? He had different counsel for his trial. That was Mr. Spencer who testified in the hearing below. He had Ms. Durrett, who's present here, for his direct appeal as well as for his 2255. But the courts below in the 2255 proceeding reviewed all of those same medical records that he complains about in his appellate briefs. And to determine that most, they reflected that he had mental health diagnoses, which is under this court's precedent, is not sufficient to show that he was incompetent. But the courts further, they also found that all the evidence introduced in the 2255 proceeding below reflected that Mr. Perkins had engaged in an intentional scheme to feign symptoms to disrupt the proceedings against him. So Mr. Perkins now asked this court to reweigh the evidence and reject the lower court's factual findings. But he must show those findings were clearly erroneous. That means he must show that they're unbelievable or that no reasonable fact finder could accept them. He has failed to do so here. I think it's worth pointing out that as to the ineffective assistance claims, Mr. Perkins also cannot meet his burden there. As we focused on some of the questions with Ms. Durrett, counsel actually did file a motion for a competency evaluation prior to Mr. Perkins being sentenced. After holding the sentencing hearing, the court left the record open so that Mr. Perkins could provide additional evidence, if he wanted, related to his sentencing. She did this because he, again, as he had done in the district court, or I mean in the trial, refused to attend his sentencing. In that interim period, Mr. Spencer filed a motion for a competency evaluation. Obviously, a counsel cannot be deemed constitutionally ineffective for failing to file a motion that they actually filed. But the record is clear, as Judge Grant also highlighted, that Judge Carnes would not have granted any such motion, any further motion to evaluate his competency, whether it be to obtain additional medical records or otherwise. Counsel cannot be deemed ineffective for failing to file a non-meritorious motion. And finally, I want to touch briefly on Ms. Durrett's argument about mitigation at sentencing. That argument was not raised as a claim in his 2255 petition. It was raised for the first time in a footnote in his reply brief in support of his 2255 petition. But that was only added to supplement his claim related to competency. He made no claim that his counsel was ineffective for failing to seek medical records to make mitigation arguments under 3553 of sentencing. That is not properly before the court. So based upon, for all those reasons, based upon the factual findings below, we ask the District Court's denial of Perkins 2255 petitions. If there are further questions, I will yield the balance of my time. Thank you. Ms. Durrett, you have five minutes. Your Honor, I will first address opposing counsel's statement that we did not raise any issue about mitigation in our 2255 brief. Our motion for a 2255 is document 359 in the District Court record and issue 2 is trial counsel provided ineffective assistance when they failed to request a mental health evaluation of Mr. Perkins prior to, during, or after trial and before sentencing. And on page 19 of the brief, counsel stated, at a minimum, counsel may have been able to As noted above, Mr. Perkins has received psychiatric care while in the custody of the Bureau of Prisons and has been diagnosed with schizophrenia. And so counsel does make that argument in the 2255 brief. So the idea that this is a new issue that the court should not consider is not borne out by the record, Your Honor. I do think the court is well aware, but I'll just say again, that even though the trial court may have found Mr. Perkins to be competent at the time of his trial, the court has a continuing duty to investigate competency. And I think that 19-month gap between the trial and sentencing was a time when the court could have investigated it, but certainly in this case, as we're arguing, defense counsel had documents that would have supported the request that he made. Of course, he didn't make that request until after the sentencing hearing. And when he did make the request, he told the court it was based on a rank hearsay rather than providing to the court actual medical documents that could have supported his claim. What about the fact that opposing counsel has pointed out the mere fact that Mr. Perkins has a mental health diagnosis is not enough to prove that he was incompetent? Well, Your Honor, does the court agree? I think we provided sufficient evidence to show that he was incompetent, but if the court disagrees with that argument, certainly the court should focus on the issue of ineffective assistance of counsel for failing to provide information to support his sentencing arguments. He asked for mitigation at sentencing, he asked for a variance, he challenged the obstruction of justice enhancement based on Mr. Perkins' behavior, but rather than come to the court with actual documents that showed the reasons for this, particularly given Mr. Perkins' history of being arrested 20 times between the ages of 7 and 14, where it should be clear to someone that there may have been some mental health issues going on. Counsel tried to make that argument to the court, but he failed to secure medical documents. I mean, we as attorneys can only do so much when we say what we think issues about mental health for clients, but to come in with medical documents from the Bureau of Prisons to say, yes, doctors who are employed by the Bureau of Prisons have found this person has delusions, psychosis, hallucinations, I think that could be persuasive to the court. And I will note... You've also put on evidence, psychiatric evidence, that far post-dates sentencing. Why should we be considering opinions of your witnesses that occurred from a diagnosis or from seeing Mr. Perkins so far after sentencing? Why is that? How is that relevant? Well, I certainly think that the idea that Bureau of Prisons doctors, not doctors that I employ, but doctors from the Bureau of Prisons have diagnosed him with mental health problems since at least 2011 all the way to 2019 should show that there's some consistency in the idea that he's suffering from serious mental health problems. Now, the government wanted to argue to the court that my expert couldn't make a retroactive competency evaluation. If the court doesn't accept that, that's fine. But her evaluation is consistent with all of the Bureau of Prisons doctors who diagnosed him with depressive-type psychosis. I will note that the government called the Bureau of Prisons doctor, Dr. Courtney Tibbetts, who said she thought that Mr. Perkins didn't have schizophrenia and she resolved that issue. But when I asked her at trial, well, what do you make of the seven other doctors who said he has depressive-type psychosis with delusions and hallucinations? She admitted, oh, I hadn't seen that. I didn't know about that. I didn't have access to those documents. So the idea that the defense expert was just making claims out of thin air that weren't supported by the record is incorrect. The Bureau of Prisons found this person was severely mentally ill over and over and over again. And if the court thinks that's not enough to support a competency problem, it certainly supports the idea that information should have been provided to the district court at sentencing in support of mitigation and in support of the objection to the obstruction argument. And, Your Honor, may I finish? Yes. And I just want to note for the court, I'm going to point the court to the district court's order, which is at document 313 at page 54. And the court itself recognized that a further record could be made to support Mr. Perkins' arguments about competency. And the court said, should the defendant establish a stronger foundation for questioning his can serve as a vehicle for this argument. If the defendant was not truly competent at the time of sentencing and thus could not voluntarily waive his appearance, it will be easy enough to resentence him. And I think that shows the court was open to changing its mind about the sentence or changing its mind about the competency finding. Thank you. Thank you. Thank you both. We have the case under advisement. Thank you, Artemis. Our next case is Richard Rose—